EXHIBIT "1"

## **SETTLEMENT AGREEMENT AND RELEASE**

This is a Settlement Agreement and Release (hereinafter the "Agreement") between Milea Truck Sales Corp., MTS Realty of Queens, Inc., and Barry Milea, on the one hand (together, the "Company"), and Albert de la Cruz Perez and Jose Otero (collectively hereinafter the "Plaintiffs"), on the other hand. The Company and the Plaintiffs may each be referred to as a "Party," or together, be referred to herein as the "Parties."

**WHEREAS,** a dispute arose between the Parties related to the Plaintiffs' employment with the Company and the terms and conditions thereof; and

**WHEREAS,** Plaintiffs have commenced an action against the Company in the United States District Court for the Southern District of New York (hereinafter the "Court") styled as Perez, et ano. v. Milea Truck Sales Corp., et al., Case No.: 1:21-cv-1100 (JPC) (RWL) (hereinafter the "Lawsuit"), alleging wage and hour violations under the Fair Labor Standards Act (hereinafter "FLSA") and the New York Labor Law (hereinafter "NYLL");

**WHEREAS,** the Company has denied any and all allegations of wrongdoing asserted by the Plaintiffs;

**WHEREAS,** the Parties participated in Court-Ordered mediation and reached a settlement in principle as codified in a Settlement Term Sheet, annexed hereto as Exhibit "A" and incorporated by reference herein; and

**WHEREAS,** the Company and the Plaintiffs desire to fully and finally resolve all differences between them.

**NOW THEREFORE,** in consideration of the mutual promises of the Parties, the receipt and sufficiency of which the Parties hereby acknowledge, the Parties intending to be bound, do hereby agree as follows:

1. **Consideration.** In consideration for the Plaintiffs' execution, compliance with, and non-revocation of this Agreement, the Company agrees to pay the Plaintiffs and their Counsel amounts to which they are not otherwise entitled in the total gross amount of Fifty Thousand and 00/100 Dollars ($50,000.00) ("Settlement Payment").

   a. The Settlement Payment shall be made within fourteen (14) days of settlement approval.

   b. The Parties agree that all monies paid to Plaintiffs (and their Counsel) shall be issued to "Cilenti and Cooper as attorneys" and reported as a 1099 to Counsel.

   c. The Plaintiffs agree and affirm that the Settlement Payment shall constitute the entire amount of monetary consideration provided to them and their legal counsel, and that Plaintiffs will not seek any further compensation for any other claimed unpaid wages, wage supplements, injuries, damages, costs, disbursements, or attorneys' fees in connection with any of the matters encompassed in this Agreement or any aspect of the Plaintiffs' relationship with the Company.

   d. Plaintiffs agree, affirm, and acknowledge that they have been paid all wages and wage supplements and all other amounts owed to them for any reason by the Company.

   e. Plaintiffs and their Counsel further agree that they shall be responsible for payment of all taxes that may be due as a result of the Settlement Payment. Plaintiffs understand and agree that no representation is made by or on behalf of the Company regarding tax obligations or consequences that may arise from this Agreement. Further, each Plaintiff and their Counsel agrees to indemnify and hold harmless the Company from and against all liens, liabilities, interest, and penalties that may be assessed against or incurred by it as a result of not deducting taxes or other withholdings or satisfying any liens or judgments arising out of the Settlement Payment.

   f. The Company will issue a 1099 form to Plaintiffs' Counsel representing the amount of monies paid to Plaintiffs' Counsel by the Company. Plaintiffs represent that no tax advice has been given to them by Released Parties, as defined *infra*, or their representatives and they understand that Released Parties make no representation or guarantee as to the tax consequences of these payments.

   g. For purposes of complete clarity, Defendants and their counsel will take no responsibility for payment of taxes owed on any portion of the Settlement Payment and Plaintiffs and their Counsel shall be solely responsible for any such payment of taxes owed, and shall indemnify and hold Defendants harmless regarding any tax liability incurred.

  3. **General Release of All Claims by Plaintiff.**

   a. In exchange for the Settlement Payment and for other good and valuable consideration, receipt of which is hereby acknowledged, Plaintiffs, and each of them on behalf of their respective family members, heirs, executors, representatives, trustees, agents, insurers, administrators, legal representatives, successors and assigns (collectively, the "Releasors"), irrevocably and unconditionally fully and forever waive, release and discharge the Company, the Company's parents, subsidiaries, affiliates, divisions, and/or related companies, and each of their respective directors, officers, shareholders, partners, employees, managers, members, agents, attorneys, and successors of the Company ("Releasees" or "Released Parties") from any and all claims, demands, actions, causes of actions, obligations, judgments, rights, fees, damages, debts, obligations, liabilities and expenses (inclusive of attorneys' fees) of any kind whatsoever, whether known or unknown, from the beginning of time to the date of Plaintiffs' execution of this Agreement, including, without limitation, any claims under any federal, state, local or foreign law, that Releasors may have, have ever had or may have in the future against Releasees, including but not limited to those arising out of, or in any way related to Plaintiffs' hire, benefits, employment, termination or separation from employment with the Company and any actual or alleged act, omission, transaction, practice, conduct, occurrence or other matter, whether or not Plaintiffs have previously filed such a claim.

   b. Plaintiffs each further agree and acknowledge that Releasors are giving up any rights or claims which Releasors may have against Releasees under numerous laws and regulations, including but not limited to, those regulating employment, whether on the federal, state, or local level, including, but not limited to:

(i) any and all claims under Title VII of the Civil Rights Act, as amended, the Americans with Disabilities Act, as amended, the Family and Medical Leave Act, as amended, the Fair Labor Standards Act (to the extent permitted by law), the Equal Pay Act, as amended, the Employee Retirement Income Security Act, as amended (with respect to unvested benefits), the Civil Rights Act of 1991, as amended, Section 1981 of U.S.C. Title 42, the Sarbanes-Oxley Act of 2002, as amended, the Worker Adjustment and Retraining Notification Act, as amended, the National Labor Relations Act, as amended, the Age Discrimination in Employment Act, as amended, the Uniform Services Employment and Reemployment Rights Act, as amended, the Genetic Information Nondiscrimination Act of 2008, the Vietnam Era Veterans' Readjustment Assistance Act of 1974, the Occupational Safety and Health Act, the Immigration Reform and Control Act of 1986, the New York State Human Rights Law, the New York Labor Law (including but not limited to the Retaliatory Action by Employers Law, the New York State Worker Adjustment and Retraining Notification Act, all provisions prohibiting discrimination and retaliation, and all provisions regulating wage and hour law), the New York Civil Rights Law, Section 125 of the New York Workers' Compensation Law, the New York City Human Rights Law, any and all claims pursuant to any other state law and all of their respective implementing regulations and/or any other federal, state, local or foreign law (statutory, regulatory or otherwise) that may be legally waived and released;

(ii) any and all claims for compensation of any type whatsoever, including but not limited to claims for salary, wages, bonuses, commissions, incentive compensation, vacation and/or severance;

(iii) any and all claims arising under tort, contract and/or quasi-contract law, including but not limited to claims of breach of an expressed or implied contract, tortious interference with contract or prospective business advantage, breach of the covenant of good faith and fair dealing, promissory estoppel, detrimental reliance, invasion of privacy, nonphysical injury, personal injury or sickness or any other harm, wrongful or retaliatory discharge, fraud, defamation, slander, libel, false imprisonment, negligent or intentional infliction of emotional distress; and

(iv) any and all claims for monetary or equitable relief, including but not limited to attorneys' fees, back pay, front pay, reinstatement, experts' fees, medical fees or expenses, costs and disbursements from the beginning of time to the date of Plaintiffs' execution of this Agreement.

c. <u>Specific Release of ADEA and OWBPA Claims</u>. In further consideration of the benefits provided to Plaintiffs in this Agreement, including but not limited to the Settlement Payment, Releasors hereby irrevocably and unconditionally fully and forever waive, release and discharge Releasees from any and all claims, whether known or unknown, from the beginning of time to the date of Plaintiffs' execution of this Agreement arising under the Older Workers' Benefit Protection Act (OWBPA) and the Age Discrimination in Employment Act (ADEA), as amended, and its implementing regulations. By signing this Agreement, Plaintiffs hereby acknowledge and confirm that they each: (i) have read this Agreement in its entirety and understands all of its terms; (ii) have been advised of and availed himself of his right to consult with an attorney prior to executing this Agreement; (iii) knowingly, freely and voluntarily assent to all of the terms and conditions set out in this Agreement including, without limitation, the waiver, release and covenants contained herein; (iv) are executing this Agreement, including the waiver and release, in exchange for good and valuable consideration in addition to anything of value to which he is otherwise entitled; (v) were given at least twenty-one (21) days to consider the terms of this Agreement and consult with an attorney of his choice, although they each may

sign it sooner if desired; (vi) understand that they each have seven (7) days from the date they sign this Agreement to revoke the release in this paragraph by delivering notice of revocation to Emanuel Kataev, Esq. at 3000 Marcus Avenue, Lake Success, NY 11042-1073 by overnight delivery before the end of such seven-day period; (vii) understand that the release contained in this paragraph does not apply to rights and claims that may arise after the date on which he signs this Agreement; and (viii) in entering into this Agreement, agree and acknowledge that they are not relying on any representation, promise, or inducement made by the Company or its attorneys with the exception of those promises described in this Agreement.

        d.     This release and waiver of claims shall not be construed to impair Plaintiffs' right to enforce the terms of this Agreement and does not include any claim which, as a matter of law, cannot be released by private agreement. Nor does this release prohibit or bar Plaintiffs from providing truthful testimony in any legal proceeding or from cooperating with, or making truthful disclosures to, any local, state, or federal governmental agency, or filing a timely charge or complaint with the EEOC, or participating in any investigation or proceeding conducted by the EEOC regarding any claim of employment discrimination. Notwithstanding the foregoing, with respect to any claim that cannot be released by private agreement, Plaintiffs each agree to release and waive and hereby does release and waive his right (if any) to any monetary damages or other recovery as to such claims, including any claims brought on Plaintiffs' respective behalves, either individually or as part of a collective action, by any governmental agency or other third party.

### 4. General Release of All Claims by Defendants.

In exchange for the Settlement Payment and for other good and valuable consideration, receipt of which is hereby acknowledged, the Released Parties irrevocably and unconditionally fully and forever waive, release and discharge the Plaintiffs from any and all claims, demands, actions, causes of actions, obligations, judgments, rights, fees, damages, debts, obligations, liabilities and expenses (inclusive of attorneys' fees) of any kind whatsoever, whether known or unknown, from the beginning of time to the date of Plaintiffs' execution of this Agreement, including, without limitation, any claims under any federal, state, local or foreign law, that the Released Parties may have, have ever had or may have in the future against Plaintiffs, including but not limited to those arising out of, or in any way related to Plaintiffs' hire, benefits, employment, termination or separation from employment with the Company and any actual or alleged act, omission, transaction, practice, conduct, occurrence or other matter, whether or not Plaintiffs have previously filed such a claim.

        b.     The Released Parties each further agree and acknowledge that they are giving up any rights or claims which they may have against Plaintiffs under numerous laws and regulations, including but not limited to, those regulating employment, whether on the federal, state, or local level, including, but not limited to:

        (i) any and all claims under the faithless servant doctrine, any and all claims pursuant to any other state law and all of their respective implementing regulations and/or any other federal, state, local or foreign law (statutory, regulatory or otherwise) that may be legally waived and released;

4

        (iii) any and all claims arising under tort, contract and/or quasi-contract law, including but not limited to claims of breach of an expressed or implied contract, tortious interference with contract or prospective business advantage, breach of the covenant of good faith and fair dealing, promissory estoppel, detrimental reliance, invasion of privacy, nonphysical injury, personal injury or sickness or any other harm, wrongful or retaliatory discharge, fraud, defamation, slander, libel, false imprisonment, negligent or intentional infliction of emotional distress; and

        (iv) any and all claims for monetary or equitable relief, including but not limited to attorneys' fees, back pay, front pay, reinstatement, experts' fees, medical fees or expenses, costs and disbursements from the beginning of time to the date of Plaintiffs' execution of this Agreement.

    5.    **Plaintiffs' Representations and Warranties**. Plaintiffs hereby each represent, warrant, acknowledge, and affirm as follows, solely as to themselves:

        a.    that neither Plaintiff has filed or permitted anyone to file on either Plaintiffs' behalf, any complaints, charges or claims for relief against the Company with any local, state, or federal court or administrative agency other than the Lawsuit;

        b.    that they each have been paid and have received all compensation, wages, overtime payments, wage supplements, bonuses, commissions, leave, paid and unpaid, paid time off and benefits to which he may be due for any reason, except as provided in this Agreement;

        c.    that they each have no known workplace injuries or occupational diseases and have been provided and/or have not been denied any leave requested under the Family and Medical Leave Act (hereinafter the "FMLA");

        d.    that they each are no longer employed by any Defendant and have no desire to be employed by any Defendant; and

        e.    that they each shall cause the Lawsuit to be dismissed with prejudice in accordance with this Agreement.

    6.    **Non-Admission of Wrongdoing**. The Company denies each and every allegation of wrongdoing, including, but not limited to, the allegations and statements contained in the pleadings, proceeding, documents, or statements whatsoever by or on behalf of Plaintiffs against Released Parties. Neither the making of this Agreement nor anything contained herein shall be construed or considered in any way to be an admission by the Company of guilt or noncompliance with any federal, state or local statute, order, regulation or ordinance, public policy, tort law, contract (whether oral or written, express or implied), common law, the Company's policies, practices, benefit plans, compensation plans or procedures, or of any other wrongdoing whatsoever.

    7.    **Non-Disparagement.** a.    Each Plaintiff agrees that he shall not, directly or indirectly, at any time, make any statement (whether written, oral, electronic, or otherwise) or otherwise take any action that would or might reasonably be interpreted as harmful or disparaging to Defendants.

b.  For purposes of the preceding sentence, "disparaging" shall mean any statement or communication, whether verbal or written, that would tend to lessen the stature or standing of the Company in the eyes of an ordinary and reasonable person in the community, but will not preclude the Plaintiffs from making truthful statements in the context of any judicial, administrative, arbitration, mediation, or other legal proceeding.

8.  **Response to Inquiries on Employment.** If a prospective employer of either Plaintiff contacts the Company seeking an employment reference, the Company will only provide the Plaintiff's dates of employment and his position held with the Company.

9.  **Breach of Agreement.** Breach of any of the provisions of this Agreement by any Party to this Agreement shall be deemed a material breach as to that Party only. In the event of any such breach incurred as to that party only, the non-breaching Party shall be entitled to recover money from the breaching party already paid to him and reasonable attorneys' fees incurred in obtaining that money and costs and injunctive relief, if so determined by a court of competent jurisdiction.

10. **Severability and Modification.** If any provision of this Agreement is declared illegal or unenforceable by any court, administrative agency or other entity, the court, administrative agency or other entity has the full authority to interpret or modify all such provisions to be enforceable and is respectfully directed to do so. If such interpretation or modification is not possible, such provision immediately shall become null and void, leaving the remainder of this Agreement in full force and effect.

11. **Non-Waiver.** No waiver of any breach of any term or provision of this Agreement shall be construed to be, or shall be, a waiver of any other breach of this Agreement. No waiver shall be binding unless in writing and signed by the Party waiving the breach. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, successors, and permitted assigns. The Company may assign this Agreement without notice in its sole discretion.

12. **Headings.** The headings in this Agreement are for the convenience of the Parties and are not intended to modify the terms of the Agreement.

13. **Multiple Counterparts.** This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which together shall constitute one and the same instrument. Faxed and e-mailed scanned copies shall be effective and enforceable.

14. **Representation by Counsel and Entire Agreement.** This Agreement sets forth the entire agreement between the Parties hereto as to the Plaintiffs' claims, and fully supersedes any and all prior discussions, agreements, or understandings between the Parties. The Parties agree that this Agreement was drafted jointly by the Parties, and therefore shall be construed according to its fair meaning, and not strictly for or against any of the Parties. Should any provision of the Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and the illegal or invalid part, term or provision shall be deemed not to be a part of the Agreement. This Agreement shall survive the cessation or termination of any arrangements contained herein.

15. **Applicable Law.** This Agreement shall be governed by and interpreted in accordance with the laws of the State of New York.

16. **Voluntary Agreement.** By signing in the space provided below, each Plaintiff agrees and affirms that:

   a. This Agreement is legally binding, and by signing it, each Plaintiff understands that he is giving up certain rights, including his right to pursue any claims against the Releasees from the beginning of time until the date of this Agreement;

   b. No promise or representation of any kind or character has been made by the Company or by anyone acting on its behalf to induce any Plaintiff to enter into this Agreement, and no Plaintiff has been forced or pressured in any way to sign this Agreement; and

   c. Through this Agreement, each Plaintiff is releasing all of the Releasees from any and all wage and hour claims that he may have against the Company in exchange for the Settlement Payment described herein;

   d. Each Plaintiff knowingly and voluntarily agrees to all of the terms set forth in this Agreement, and intends to be legally bound by them.

17. **Dismissal with Prejudice.** The Parties agree to enter into a Stipulation of Voluntary Dismissal promptly upon Defendants' issuance of the Settlement Payment to Plaintiffs' Counsel.

---

**MILEA TRUCK SALES CORP.**

By:_____          DATE: ____/____/____
   **Barry Milea**
**Its: President**

---

**MTS REALTY OF QUEENS, INC.**

By:_____          DATE: ____/____/____
   **Barry Milea**
**Its: President**

---

_____              DATE: ____/____/____
**Barry Milea**

- [illegible]

- [illegible]

- [illegible]

- [illegible]

| | |
|---|---|
| **MILEA TRUCK SALES CORP.** | |
| By: _____ *Barry Milea* Its: President | DATE: 6 / 21 / 21 |

| | |
|---|---|
| **MTS REALTY OF QUEENS, INC.** | |
| By: _____ *Barry Milea* Its: President | DATE: 6 / 21 / 21 |

| | |
|---|---|
| _____ **Barry Milea** | DATE: 6 / 21 / 21 |

| | |
|---|---|
| _____ **Albert De La Cruz Perez** | DATE: ___ / ___ / ___ |

7

_____          DATE: 6 / 21 / 2021
**Albert De La Cruz Perez**

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF            )

On the 21st day of June, 2021 before me personally appeared Albert De La Cruz Perez personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and that by his signature on the instrument, the individual executed the instrument and that such individual made such appearance before the undersigned.

PETER H. COOPER
Notary Public, State of New York
No. 02CO5059941
Qualified in New York County
Commission Expires MAY 6, 2022

_____
NOTARY PUBLIC

_____          DATE: 6 / 21 / 2021
**Jose Otero**

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF            )

On the 21st day of June, 2021 before me personally appeared Jose Otero personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and that by his signature on the instrument, the individual executed the instrument and that such individual made such appearance before the undersigned.

_____
NOTARY PUBLIC

PETER H. COOPER
Notary Public, State of New York
No. 02CO5059941
Qualified in New York County
Commission Expires MAY 6, 2022

EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ALBERT DE LA CRUZ PEREZ and JOSE OTERO, on
behalf of themselves, and others similarly situated,

                Plaintiff,

-against-

MILEA TRUCK SALES CORP., MTS REALTY OF
QUEENS, INC., and BARRY MILEA, individually,

                Defendants.
------------------------------------------------------------------X

**Case No.:** 1:21-cv-1100 (JPC) (RWL)

**SETTLEMENT TERM SHEET**

The parties hereby agree to settle this case on the following terms:

1) This is an agreement to settle, which will be subject to and conditioned upon Court approval.

2) The Defendants make no admission of liability and will receive a release of claims and dismissal of the pending action. The parties will consent to the Magistrate Judge for approval of this settlement and dismissal of this case.

3) The Plaintiffs shall receive from the Defendants, in full and final settlement of the claims raised in this case (inclusive of attorneys' fees and costs), the amount of fifty thousand dollars ($50,000.00) payable within fourteen (14) days of settlement approval. The payment shall be made payable to "Cilenti and Cooper as attorneys", reported on 1099 to counsel, and shall be delivered to Cilenti and Cooper, who will be solely responsible for distribution to the plaintiffs their proportionate shares.

4) Defendants and their counsel will make take no responsibility for payment of taxes owed on any portion of the payment and plaintiffs and their counsel will be solely responsible for payment of taxes owed and shall indemnify / hold harmless defendants regarding any tax liability incurred.

5) Dismissal shall be conditioned upon and filed promptly upon payment (expected to be 2 weeks following approval).

6) Defendants shall draft the settlement agreement and Plaintiff shall draft the parties' joint motion for settlement approval to be exchanged with each other in submission of same.

7) Counsel are authorized to bind their clients to this agreement which constitute the material terms of the settlement and can be enforced with or without a supplemental written agreement.

_____
Plaintiffs
By their attorneys, as attorney-in-fact

_____
Defendants
By their attorneys, as attorneys-in-fact